NOT DESIGNATED FOR PUBLICATION

No. 118,049

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS JAMES BERRY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed April 12, 2019. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Christine M. T. Ladner*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.

PER CURIAM: A jury convicted Travis Berry of criminal sodomy, attempted criminal sodomy, and aggravated indecent liberties with a child arising from an incident in 2012. But it acquitted Berry of the charge arising from an incident in 2013. Berry appeals, arguing (1) the district court erred in admitting evidence of his other sexual misconduct under K.S.A. 2016 Supp. 60-455; (2) his convictions for attempted criminal sodomy and aggravated indecent liberties are multiplicious; and (3) the State did not present sufficient evidence to support his convictions. Finding no error, we affirm.

1

FACTS

Sometime in May 2012, A.H.'s father allowed his friend, Berry, to move into the basement of A.H.'s family's home. At the time, A.H. was 14 years old and just finishing 8th grade. After school let out for the summer, Berry watched A.H. and her two younger sisters while her father and mother were at work.

One day that summer, the three girls were in the basement with Berry. A.H.'s two younger sisters were playing video games with him, and A.H. was sitting on his bed reading a book. Berry told A.H.'s sisters to take the dog for a walk, which normally took about five minutes.

After they left, Berry came over to the bed, pulled the book out of A.H.'s hands, and set it to the side. He had her lie down on her back. He then got on the bed, with his knees on either side of her legs and his hands by her side. He put his hands up her shirt, pushed up her bra, and touched and sucked on her breasts. Next, Berry pulled down her pants and underwear and licked her genitals.

When Berry heard A.H.'s sisters come back through the front door, he got off A.H., and she pulled up her underwear and pants. When A.H.'s sisters got to the bottom of the basement stairs, Berry told them to take the dog on a longer walk. After A.H.'s sisters left again, Berry wrapped A.H.'s hand around his penis. He tried to get her to put his penis in her mouth and told her, "[I]t's just like a Popsicle." Berry held A.H.'s hand around his penis until her sisters returned. By the time her sisters made it downstairs, he was playing video games again. A.H. did not tell her sisters anything because she was afraid, and she barely understood what had happened.

2

Berry suddenly moved out of the family's home in July 2012. When Berry remarried in 2013, A.H.'s father was in the wedding. The two eventually lost touch after that.

A.H. did not tell anyone what had happened until the end of 2014. She and her boyfriend, E.M., were talking about taking their relationship further. She told E.M. she was hesitant to become sexually active with him because she had been molested, but she did not recall telling him the details.

E.M. wanted to report the man who had molested A.H., but she would not give him the man's name and made E.M. swear he would not tell her parents. A.H. said the man was married and had children. She knew the children, and she did not want them to lose their father.

One night in April 2015, A.H. was at a youth group meeting at church. The pastor gave a lesson on teenage relationships and sexuality. At the end of the lesson, he broached the topic of sexual abuse. He told the kids if they had been abused or raped, it was not their fault. He urged the kids to report any abuse they may have experienced.

After the lesson, A.H. approached Jennifer McBride, a youth sponsor who helped out with the youth group. McBride had known A.H. for several years. She asked McBride if they could meet the next day to talk. According to McBride, A.H.'s demeanor was grave.

A.H. and McBride met the next day. A.H. told McBride that her father's friend had done inappropriate things to her without her permission. She told McBride about one incident when the friend had sent her sisters to take the dog for a walk. He pinned her down and at one point his penis was in her hand. The incident ended when the sisters

3

returned, and A.H. scrambled to get away from him. McBride encouraged A.H. to tell her parents.

Later that night, A.H.'s father could see she was upset. She told her father she needed to talk with him and the two went out on the porch. She told him about the 2012 incident. She explained Berry had sent her sisters to take the dog for a walk. He then held her down, performed oral sex on her, and tried to force her to perform oral sex on him. He put his penis in her hand and told her to treat it like a Popsicle.

A.H.'s father called her mother out onto the porch and told her what A.H. had said. He also told A.H. it was up to her whether they reported it. He then called Berry's ex-wife to tell her what A.H. had said. Berry's ex-wife told him that she was a mandated reporter and she would have to report it if they did not.

A.H.'s mother and father then went to Berry's house to confront him. Her father told Berry what A.H. had said and threatened to rip Berry's throat out if he lied. Berry denied the allegations.

The next day, A.H. went with her parents to the Salina Police Department to report the incident. In her statement, she described the 2012 incident. The officers asked her if Berry had done anything else to her and she said he had tried to touch her a second time when he stayed at A.H.'s home the night before his wedding. According to A.H., Berry came to her bedroom door and told her to come out to the living room. She went out to the living room and sat on the couch where Berry lay. He eventually had her lie down next to him. He then tried to place his hand under her shirt and touch her breasts, but she stopped him with her arm.

The State charged Berry with one count of criminal sodomy, one count of attempted criminal sodomy, and one count of aggravated indecent liberties with a child

4

arising out of the 2012 incident. The State charged Berry with one count of attempted aggravated indecent liberties with a child arising out of the 2013 incident.

On November 7, 2016, seven days before trial, the State filed a motion under seal to admit evidence of Berry's prior sexual misconduct under K.S.A. 60-455. In a police interview, E.M. had said A.H. told him Berry had sexually molested her several times, and it did not stop until Berry got married. The State argued E.M.'s statements were admissible as propensity evidence under K.S.A. 2016 Supp. 60-455(d), as well as to show a course of conduct and the relationship between the parties.

The State also noted it had turned over all discovery to Berry.

At a hearing the next day, Berry objected to the motion, arguing the State had not timely filed it, and the State was offering E.M.'s testimony as propensity evidence. He noted that under K.S.A. 2016 Supp. 60-455(e), the State must disclose any prior crimes evidence it intended to use at trial to the defense 10 days before trial. And the State had filed its motion seven days before trial was set to start on November 14.

The State responded that it had turned over a report of E.M.'s police interview to Berry several months ago. Also, the State had originally tried to file the motion on November 3, but the district court had not issued an order allowing the State to file under seal. As a result, the motion was not officially filed until November 7. The court held that the State's motion was timely, and E.M.'s testimony about Berry's other sexual misconduct would be admissible as propensity evidence.

At trial, E.M. testified that A.H. had told him she wanted to wait to become sexually active because a man who had lived with her parents for a while had molested her several times. She told him that one day during her freshman year of high school, her sisters had gone out to walk the dog, and she was left alone with the man. While her

sisters were gone, he forced her to perform oral sex on him, and he also performed oral sex on her on the bed in the basement. She told E.M. she did not want to do it, but the man told her there was no point in resisting because no one would believe her and people would think she was a slut.

E.M. also said A.H. told him that every time she was alone with the man, he would do something to her. This included forcing her to perform oral sex on him and digitally penetrating her. The frequency of these incidents eventually slowed down and stopped after Berry got married.

During E.M.'s testimony, Berry objected twice. First, he objected based on hearsay because E.M. was relaying statements made to him by A.H. outside court. Then, he objected because E.M. was referring to several events outside the time span of the charges without giving Berry prior notice of what the time span would be. The court overruled both objections.

A.H. testified about the 2012 incident in the basement and the 2013 incident the night before Berry's wedding. She said she did not consent to any of the sexual contact with Berry. She admitted she had told E.M. about the 2012 incident, but she denied giving him details. She also denied telling E.M. that Berry had sexually molested her several times.

The jury convicted Berry of criminal sodomy, attempted criminal sodomy, and aggravated indecent liberties with a child arising from the 2012 incident. But it acquitted him of the attempted aggravated indecent liberties with a child charge arising from the 2013 incident. The district court sentenced Berry to a controlling sentence of 59 months' imprisonment. Berry appeals.

*Did the District Court Err in Admitting Evidence of Berry's Other Sexual Misconduct Under K.S.A. 60-455?*

Berry argues the district court erred in admitting E.M.'s testimony. He asserts the State did not timely file its K.S.A. 2018 Supp. 60-455 motion. He also contends E.M.'s testimony was not relevant and its prejudicial effect outweighed its probative value. We will address them in turn.

*Standard of Review and Relevant Law*

Berry first argues the State did not comply with the timing requirement under K.S.A. 2018 Supp. 60-455(e). Because this issue requires statutory interpretation, we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015); see also *State v. Adkins*, No. 104,611, 2011 WL 6382858, at *1 (Kan. App. 2011) (unpublished opinion) (using unlimited review to determine whether State violated time requirements under 2009 Supp. K.S.A. 60-455[e]).

Statutory interpretation's most fundamental rule is the legislature's intent governs if that intent can be determined. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). We must first try to determine the legislature's intent through the statute's language and give words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, we do not guess about the legislative intent behind that language, and we avoid reading something into the statute that is not readily found there. *Barlow*, 303 Kan. at 813.

*The State Complied with K.S.A. 2018 Supp. 60-455*

K.S.A. 2018 Supp. 60-455 governs the admission of evidence about other crimes or civil wrongs. That statute allows admission of the defendant's other sexual misconduct

7

in trials for certain sex offenses as long as the evidence is relevant and probative. K.S.A. 2018 Supp. 60-455(d). But if the State intends to offer evidence under this statute, "the prosecuting attorney shall disclose the evidence to the defendant, including statements of witnesses, at least ten days before the scheduled date of trial or at such later time as the court may allow for good cause." K.S.A. 2018 Supp. 60-455(e).

Berry argues the State did not timely file its motion under K.S.A. 2018 Supp. 60-455(e). But that statute's plain language requires the State only to disclose the evidence to the defense 10 days before trial. At the motion hearing, the State told the district court it had disclosed a report of E.M.'s interview to Berry several months ago, and the report contained all the information the State intended to offer at trial. Berry did not challenge this assertion at the hearing. On that basis, we affirm the district court as right for the wrong reason. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

*Harmless Error*

Even if the district court had erred in admitting the evidence, any possible error was harmless. The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2018 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). Under that standard, the party benefiting from the error must persuade us that no reasonable probability exists that the error affected the trial's outcome given the entire record. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012).

E.M. testified at trial that A.H. told him Berry had molested her on several occasions. But A.H.'s testimony contradicted his. She denied telling E.M. any details of what Berry had done. She also denied telling him that Berry had molested her several times. The jury acquitted Berry of the charges related to the 2013 incident. Based on the record, no reasonable probability exists that E.M.'s testimony about Berry's other sexual misconduct affected the verdict.

8

*Berry did not Preserve the Argument the Evidence was Irrelevant and More Prejudicial than Probative.*

Next, Berry argues E.M.'s testimony was irrelevant and more prejudicial than probative. The State responds that Berry has failed to preserve this issue because he did not object to the evidence on these grounds at trial. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). This rule helps the district court avoid trial errors, including the presentation of tainted evidence. *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009). Any pretrial objection to the admission or exclusion of evidence generally must be preserved by contemporaneously objecting at trial. See *State v. Holman*, 295 Kan. 116, 126-27, 284 P.3d 251 (2012).

During E.M.'s testimony, Berry objected twice. First, he objected based on hearsay because E.M. was relating statements made by A.H. The court overruled the objection, finding the State was going to call A.H. to testify later. Berry later objected to lack of notice about the time frame of the several incidents E.M. was testifying about, saying "I know we had the 60-455 filed by the State, but my concern now is we're ta[l]king about multiple acts over a period of time w[h]ere no notice of what he's claiming the time frame to be." The court overruled the second objection, finding it had already ruled that all prior incidents were admissible.

So while Berry objected to E.M.'s testimony, he did not object on the grounds that his testimony was irrelevant or more prejudicial than probative. A defendant cannot object to the introduction of evidence on one ground at trial then assert another ground on appeal. *State v. Richmond*, 289 Kan. 419, Syl. ¶ 4, 212 P.3d 165 (2009). While Kansas appellate courts have at times declined to strictly apply the contemporaneous objection

9

rule under some circumstances, Berry does not argue this exception should apply here. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013) (declining to apply contemporaneous objection rule because both parties requested appellate review of issue); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012) (declining to apply rule because the basis of party's objection was clear from entire record).

K.S.A. 60-404 has long provided:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

The Supreme Court in *King* emphasized this is a matter of legislative intent:

"Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. [Citation omitted.] More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404." 288 Kan. at 349.

The *King* court also gave clear directions that we must follow in this case: "From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." 288 Kan. at 349; see *State v. Shadden*, 290 Kan. 803, 835, 235 P.3d 436 (2010).

10

Following the example set out in *King*, if the admission of the K.S.A. 60-455 evidence in this case was erroneous, Berry, as the party now complaining about its admission, was obliged to object to its admission when it was offered. With no such objection in the record, the question is not properly before us.

*Are Berry's Convictions for Attempted Criminal Sodomy and Aggravated Indecent Liberties with a Child Multiplicious?*

Berry argues his convictions for attempted criminal sodomy and aggravated indecent liberties with a child are multiplicious. He asserts both charges arose out of the same conduct and asks us to vacate his aggravated indecent liberties conviction. The State responds that Berry's convictions are not multiplicious because they arise under different statutes with different elements.

*Standard of Review and Relevant Law*

Multiplicity is the charging of a single offense in several counts of a complaint or information. *State v. Pribble*, 304 Kan. 824, 826, 375 P.3d 966 (2016). Because it creates the potential for several punishments for a single offense, it violates the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. 304 Kan. at 826. Multiplicity issues are questions of law subject to unlimited review. *State v. Belt*, 305 Kan. 381, 407, 381 P.3d 473 (2016).

The main inquiry in a multiplicity analysis is whether multiple convictions are for the same offense. *State v. Schoonover*, 281 Kan. 453, 496, 133 P.3d 48 (2006). This inquiry has two parts. First, we must determine if the convictions arise from the same conduct. If so, we must then determine if there are one or more offenses by statutory definition. If the convictions arise from the same conduct and constitute only one offense by statute, the convictions are multiplicious. 281 Kan. at 496.

11

*Convictions Arise from Same Conduct*

To determine if the charges arise from the same conduct, the factors a court may consider include "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." *Schoonover*, 281 Kan. at 497. The State asserts Berry committed aggravated indecent liberties when he placed A.H.'s hand around his penis, and he committed attempted criminal sodomy when he tried to get A.H. to perform oral sex on him by saying, "It's just like a Popsicle." It concedes Berry's convictions for attempted criminal sodomy and aggravated indecent liberties arise from the same conduct.

Despite the State's concession, Berry's argument ends here. He has not briefed the second step of the multiplicity inquiry. In fact, he states in his brief that the two charges are not the same offense. He simply asks us to vacate one of his convictions because the charges arose out of the same conduct under the *Schoonover* factors. But this only fulfills one-half of the multiplicity inquiry. As a result, Berry has waived and abandoned any argument that his convictions are not the same offense by statute. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

*Convictions Are Not for Same Offense*

Still, attempted criminal sodomy and aggravated indecent liberties with a child are not the same offense by statutory definition. If a multiplicity issue arises from more than one conviction under a single statute, courts apply the unit of prosecution test.

*Schoonover*, 281 Kan. at 497-98. But if the issue arises from more than one conviction under different statutes, courts apply the same-elements test. 281 Kan. at 498.

Because Berry's convictions arise under different statutes, we must use the same-elements test. See K.S.A. 2018 Supp. 21-5504 (criminal sodomy); K.S.A. 2018 Supp. 21-5506 (aggravated indecent liberties with a child). That test asks: "Does one statute require proof of an element not necessary to prove the other offense? If so, the statutes do not define the same conduct and there is not a double jeopardy violation." *Schoonover*, 281 Kan. at 498.

The State charged Berry with attempted criminal sodomy. See K.S.A. 2018 Supp. 21-5504(a)(3). That subsection defines criminal sodomy as sodomy with a child who is 14 or more years old but less than 16 years old. K.S.A. 2018 Supp. 21-5504(a)(3). Sodomy is defined in part as "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia." K.S.A. 2018 Supp. 21-5501(b). And K.S.A. 2018 Supp. 21-5301(a) defines an attempt as any overt act toward the commission of a crime with the intent to commit the crime but failing to complete the crime.

The State also charged Berry with aggravated indecent liberties with a child. See K.S.A. 2018 Supp. 21-5506(b)(2)(A). That subsection defines aggravated indecent liberties as engaging with a child who is 14 or more years old but less than 16 years old in any lewd fondling or touching of the child or the offender "done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" without the child's consent. K.S.A. 2018 Supp. 21-5506(b)(2)(A).

Attempted criminal sodomy and aggravated indecent liberties with a child both require proof of an element the other does not. Attempted criminal sodomy requires an attempt to make oral contact with the female or male genitalia. Aggravated indecent liberties with a child requires lewd fondling with the intent to arouse or satisfy the sexual

13

desires of the offender, child, or both without the child's consent. Aggravated indecent liberties with a child does not require an attempt to make oral contact with the female or male genitalia, and attempted criminal sodomy does not require the intent to satisfy or arouse the sexual desires of one or both of the parties without the child's consent. See *State v. Colston*, 290 Kan. 952, 972, 235 P.3d 1234 (2010) (finding rape and aggravated indecent liberties convictions were not multiplicious because rape required proof of sexual intercourse and aggravated indecent liberties required proof of intent to arouse sexual desires).

Berry cites *State v. Holman*, 295 Kan. 116, 284 P.3d 251 (2013) and *State v. Gadbury*, No. 102,024, 2011 WL 135019 (Kan. App. 2011) (unpublished opinion), in which Kansas appellate courts held a defendant's convictions of aggravated criminal sodomy or aggravated indecent liberties were multiplicious. But both these cases involved multiple convictions under a single statute, requiring the courts to apply the unit of prosecution test. See *Holman*, 295 Kan. at 148-49; *Gadbury*, 2011 WL 135019, at *12-13. Thus, these cases are not relevant to Berry's argument.

Berry's convictions may have arisen from the same conduct. But they are different offenses by statutory definition. Because they are different offenses, Berry's convictions are not multiplicious.

*Did the State Provide Sufficient Evidence to Support Berry's Convictions?*

Finally, Berry argues the State did not provide sufficient evidence to support his convictions. He asserts the State did not show he made an overt act toward the commission of criminal sodomy. He also generally argues the evidence does not support any of his convictions because A.H. was not credible, and he only had a limited opportunity to commit the crime.

14

*Standard of Review and Relevant Law*

When a criminal defendant challenges the sufficiency of the evidence supporting a conviction, the standard of review is whether, after reviewing all the evidence in a light most favorable to the State, this court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 712(2018). In performing this review, we do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. 307 Kan. at 668.

As noted in the previous issue, to support Berry's criminal sodomy conviction, the State had to prove (1) Berry made oral contact with A.H.'s genitalia or she had oral contact with his genitalia, and (2) A.H. was more than 14 years old but less than 16 years old. K.S.A. 2018 Supp. 21-5504(a)(3). To support his attempted criminal sodomy conviction, the State had to prove (1) Berry made an overt act toward committing criminal sodomy; (2) he intended to commit criminal sodomy; and (3) he failed to commit criminal sodomy. K.S.A. 2018 Supp. 21-5301(a). And to support his aggravated indecent liberties conviction, the State had to prove (1) Berry fondled or touched A.H.; (2) he did so with the intent to satisfy his sexual desires, A.H.'s sexual desires, or both; (3) A.H. was 14 or more years old but less than 16 years old: and (4) A.H. did not consent to the touching. K.S.A. 2018 Supp. 21-5506(b)(2)(A).

*Evidence is Sufficient to Support Attempted Criminal Sodomy Conviction*

First, Berry argues the evidence cannot support his attempted criminal sodomy conviction because it did not show he made an overt act. An overt act "'necessarily must extend beyond mere preparations made by the accused and must approach sufficiently near to the consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense.' [Citation omitted.]" *State v. Brown*, 306 Kan. 1145, 1163, 401 P.3d 611 (2017). Berry exposed his penis while standing within

15

arm's reach of A.H. and said, "It's just like a Popsicle." These acts are near enough the commission of criminal sodomy to constitute a first or later step.

*Evidence is Sufficient to Support All Convictions*

Berry also generally argues that the State did not provide sufficient evidence to support any of his convictions. The State's case relied mainly on A.H.'s credibility, and Berry points to evidence he believes calls her credibility into question. He notes she delayed reporting the incidents. He adds that her prior statements about the 2012 incident did not mention that Berry had touched her breasts or that her sisters took the dog for two walks. And that her testimony was also inconsistent with E.M.'s testimony on some points. But as noted, we do not determine witness credibility. A.H.'s testimony was not so incredible that no reasonable fact-finder could find Berry guilt beyond a reasonable doubt. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Berry also argues that his opportunity to commit the crime was limited. He asserts he did not stay at A.H.'s home for long and, while he was staying there, he often left the home to run errands, such as picking up his girlfriend from work or applying for jobs. But again, we do not reweigh evidence. Instead, we look at the evidence in the light most favorable to the State. In that light, the evidence was enough to support Berry's convictions.

A.H. testified at trial that Berry had her lie down on his bed, he touched her breasts, he performed oral sex on her, and he placed her hand around his penis and told her, "It's just like a Popsicle." At the time, she was 14 years old and she did not consent to the contact. She made similar statements about the incident to E.M., McBride, her parents, and police, who all testified at trial. She explained she delayed reporting because she was afraid. While she did not tell anyone about the 2013 incident before her police

16

interview, the jury acquitted Berry of the charges arising from that incident. The State therefore provided sufficient evidence to support Berry's convictions, and we affirm.

Affirmed.