NOT DESIGNATED FOR PUBLICATION

No. 118,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL JOHN TUBBS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed April 26, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant, and *Michael John Tubbs*, appellant pro se.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.


PER CURIAM: Michael Tubbs appeals his conviction by a jury of two counts of aggravated indecent liberties with a child. On appeal, Tubbs raises four issues: The district court lacked jurisdiction over his crimes because the State's complaint was deficient; the district court erred by admitting inculpatory statements he made after failing his polygraph exam; his counsel was ineffective for failing to object to the inculpatory statements at trial; and he was denied an impartial trial judge. Finding no error, we affirm.

*Factual and procedural background*

In August 2010, B.G., a 12-year-old girl, spent the night at her friend K.H.'s house where Tubbs, K.H.'s stepfather, lived. We find it unnecessary for purposes of this appeal to set out the lurid details giving rise to Tubbs' convictions, some of which occurred that night.

When Tubbs was advised that B.G. had reported sexual allegations against him, Tubbs agreed to be interviewed by Dawn Michelle Spaulding. Both Spaulding and Detective Chris Evans interviewed Tubbs and advised him that he was not required to submit to the interview. Tubbs denied ever having sexual contact with B.G. and suggested that she made the story up. Tubbs told the detectives that he had a history of sleepwalking and seemingly implied that sleepwalking could have been involved in the alleged incident, but he never admitted guilt.

Tubbs later voluntarily drove himself to another interview with Detective Bill Wall and Tubbs agreed to take a polygraph examination. During the examination, Tubbs denied having sexual contact with B.G. Wall determined, however, that Tubbs was being deceptive in his answer. After telling Tubbs so, Wall asked Tubbs to explain why he failed the polygraph examination. Tubbs then made some incriminating statements that he later moved to suppress. The State charged Tubbs with one count of aggravated indecent liberties with a child in connection to B.G.'s accusations.

While the police were investigating B.G.'s allegations, K.H. came forward with her own allegations of Tubbs' sexual abuse from 2007 to 2010. Her allegations prompted the State to charge Tubbs with rape and two counts of aggravated indecent liberties with a child in a separate case. At the request of the State and over Tubbs' objection, the district court consolidated the two cases for trial.

The parties eventually negotiated a plea agreement. But after Tubbs entered a no contest plea, he moved to withdraw it. The district court denied Tubbs' motion but a panel of this court reversed and allowed Tubbs to withdraw his plea and proceed to trial. See *State v. Tubbs*, No. 110,617, 2015 WL 569382, at *1 (Kan. App. 2015) (unpublished opinion). He did so.

At trial, the State called B.G., K.H., and their mothers to testify. The State also called the police officer B.G. first reported the incident to (Robert Mason); Detectives Spaulding, Wall, and Evans; DNA analyst Kelly McGuil Carroll; and forensic interviewer Jennifer Tylicki. Wall testified to the incriminating statements Tubbs had made after his polygraph examination. Tubbs testified on his own behalf and also called his old boss (Christopher Kip Wendler) to testify regarding his knowledge of Tubbs' relationship with K.H.'s mother.

The jury convicted Tubbs of two counts of aggravated indecent liberties: one in connection to K.H. and one in connection to B.G. The jury was hung on the rape charge and on the other aggravated indecent liberties charge in connection to K.H. Based on his Jessica's Law convictions, Tubbs was sentenced to life in prison. Tubbs timely appeals.

*Did the State fail to properly invoke jurisdiction?*

We first address Tubbs' argument that the district court lacked subject matter jurisdiction over his crimes because the State's charging document was insufficient.

*The district court had subject matter jurisdiction.*

Although Tubbs failed to object to this issue below, it relates to subject matter jurisdiction and issues relating to the court's subject matter jurisdiction may be raised at any time. See *Peterson v. Ferrell*, 302 Kan. 99, 102-03, 349 P.3d 1269 (2015). "The

3

question of whether subject matter jurisdiction exists is one of law subject to unlimited review on appeal. [Citation omitted.]" *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

Tubbs challenges the sufficiency of the State's charging document. Before 2016 and the Kansas Supreme Court's decision in *Dunn*, the question of whether a criminal complaint was defective raised a question of subject matter jurisdiction. *State v. Rivera*, 48 Kan. App. 2d 417, 451, 291 P.3d 512 (2012). But in *Dunn*, our Supreme Court reversed a long line of precedent and found that deficiencies in an indictment, complaint, or information did not remove subject matter jurisdiction over criminal cases in the district or appellate courts. Instead, subject matter jurisdiction is extended to the courts by the Kansas Constitution. 304 Kan. at 811. See Article 3, Section 6(b) of the Kansas Constitution (giving district courts "jurisdiction in their respective districts as may be provided by law"); K.S.A. 20-301 (requiring county to have a district court, which shall have general original jurisdiction of all matters, both civil and criminal"); K.S.A. 22-2601 (providing the district court has "exclusive jurisdiction to try all cases of felony and other criminal cases arising under the statutes of the state of Kansas").

Tubbs was charged with three counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504 and K.S.A. 2010 Supp. 21-3504, and with one count of rape in violation of K.S.A. 21-3502. Tubbs was charged with these crimes in Johnson County, where his crimes were committed. This is enough to show that the Johnson County District Court had subject matter jurisdiction over Tubbs' crimes.

*The State's complaint was sufficient.*

In his supplemental brief, Tubbs argues that the State's complaint was insufficient because it lacked a "written statement." Although Tubbs' brief is less than clear, he seems to be arguing that the State failed to allege facts that, if proved beyond a reasonable

doubt, show the commission of a Kansas crime. Tubbs then argues that the defective complaint violated his due process and other constitutional rights.

When determining whether a complaint is defective, we exercise de novo review. *Dunn*, 304 Kan. at 819. And to the extent Tubbs' argument involves statutory interpretation, we exercise unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

*Dunn* recognizes three types of charging-document defects. The first is when the document does not satisfy the Kansas Constitution's requirement that the charges be filed in the correct court and territory. The second defect is when the charging document does not allege facts that, if proved beyond a reasonable doubt, show the commission of a Kansas crime as required by state statutes. The third occurs when the charging document does not meet the constitutional standards of providing the defendant due process and adequate notice of the charges. The first defect creates a state constitutional error, the second a state statutory error, and the third a violation of federal and state constitutional rights. *Dunn*, 304 Kan. at 815-16. Tubbs seems to argue that the second and third type of defects occurred here.

Tubbs did not raise this issue below. But he argues that the issue of whether the complaint was defective can be raised for the first time on appeal because it requires statutory interpretation and because it is a question of law and is determinative of the case. We assume, without deciding, that Tubbs has adequately preserved this claim of error. See K.S.A. 2018 Supp. 22-3208(3); *Dunn*, 304 Kan. at 818.

*The complaint adequately alleged the necessary factual basis.*

Tubbs' argument that the State's complaint lacked a "written statement" seems to imply that the complaint failed to allege facts that, if proved beyond a reasonable doubt,

5

would show the commission of a crime. To be sufficient, the State's complaint had to "allege facts sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale." K.S.A. 22-3201(c). The statute also requires that the complaint "be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient." K.S.A. 22-3201(b).

Tubbs was charged with three counts of aggravated indecent liberties with a child and one count of rape. To properly charge Tubbs with aggravated indecent liberties under K.S.A. 2010 Supp. 21-3504(a)(3) and K.S.A 21-3504(a)(3), the State's complaint had to provide a factual statement that showed Tubbs: (1) engaged in lewd fondling, (2) of a child under the age of fourteen or of himself, (3) with the intent to arouse or satisfy either his own sexual desires or the child's sexual desires, (4) in Johnson County, Kansas, and (5) when Tubbs was at least eighteen years old.

The amended complaint charged the following facts:

"COUNT I—That on or about the 21st day of August, 2010 in the City of Roeland Park, County of Johnson, State of Kansas, MICHAEL JOHN TUBBS did then and there unlawfully, knowingly, willfully and feloniously engage in lewd fondling or touching with a child who is under fourteen (14) year of age, to-wit: [B.G.], with the intent to arouse or satisfy the offender's or the child's sexual desires, while the offender MICHAEL JOHN TUBBS was eighteen (18) years of age or older, an off-grid person felony, in violation of K.S.A. 21-3504 and K.S.A. 21-4706. (aggravated indecent liberties)

. . . .

"COUNT III—Further, that on or between the 1st day of May, 2007 and the 31st day of December, 2010 in the City of Roeland Park, County of Johnson, State of Kansas, MICHAEL JOHN TUBBS did then and there unlawfully, knowingly, willfully and

6

feloniously engage in lewd fondling or touching with a child who is under fourteen (14) year of age, to-wit: K.H., with the intent to arouse or satisfy the offender's or the child's sexual desires, while the offender MICHAEL JOHN TUBBS was eighteen (18) years of age or older, an off-grid person felony, in violation of K.S.A. 21-3504 and K.S.A. 21-4706. (aggravated indecent liberties)

"COUNT IV—Further, that on or between the 1st day of May, 2007 and the 31st day of December, 2010 in the City of Roeland Park, County of Johnson, State of Kansas, MICHAEL JOHN TUBBS did then and there unlawfully, knowingly, willfully and feloniously engage in lewd fondling or touching with a child who is under fourteen (14) year of age, to-wit: K.H., with the intent to arouse or satisfy the offender's or the child's sexual desires, while the offender MICHAEL JOHN TUBBS was eighteen (18) years of age or older, an off-grid person felony, in violation of K.S.A. 21-3504 and K.S.A. 21-4706. (aggravated indecent liberties)"

If proved beyond a reasonable doubt, the facts stated in the complaint would show that Tubbs committed the crime of aggravated indecent liberties under K.S.A. 21-3405(a)(3). The complaint also included an affidavit. Like the complaint, the affidavit also lists the necessary facts that, if proved beyond a reasonable doubt, would show that Tubbs committed aggravated indecent liberties against B.G.

The same is true for the count of rape. To properly charge the crime of rape, the complaint's factual basis had to show: (1) Tubbs had sexual intercourse with K.H.; (2) K.H. was under fourteen years of age; (3) Tubbs was at least eighteen years old; and (4) the rape occurred in Johnson County, Kansas. K.S.A. 21-3502(a)(2). These four elements are alleged in the complaint:

"COUNT II—That on or between the 1st day of May, 2007 and the 31st day of December, 2010 in the City of Roeland Park, County of Johnson, State of Kansas, MICHAEL JOHN TUBBS did then and there unlawfully, knowingly, willfully and feloniously commit the act of sexual intercourse with a child under fourteen (14) year of age, to-wit: [K.H.], while the offender MICHAEL JOHN TUBBS was eighteen (18)

7

years of age or older, an off-grid person felony, in violation of K.S.A. 21-3502 and
K.S.A. 21-4706. (rape)"

If proved beyond a reasonable doubt, the facts stated above would show that that Tubbs committed the crime of rape under K.S.A. 21-3502(a)(2). As a result, the State's complaint was sufficient to state an adequate factual statement, meeting the requirements of the statute.

> *The complaint met the constitutional standards of providing Tubbs due process and adequate notice of the charges.*

Tubbs also argues that his due process rights were violated by deficiencies in the State's complaint. Specifically, Tubbs contends that the State's insufficient charging documents impaired his right to a fair trial, impaired his ability to prepare a defense, and raised the specter of double jeopardy.

Tubbs makes nothing more than a single sentence, generalized claim that he was "prejudiced" by the deficiency. Nor does he show any double jeopardy problems. As explained above, the charging document was not deficient. Without a deficiency, Tubbs suffered no prejudice. His right to a fair trial and to prepare a defense were not impaired.

*Did the district court err by admitting inculpatory statements that Tubbs made after he was told that he failed a polygraph exam?*

Tubbs next contends that the district court erred by admitting inculpatory statements that Tubbs made after he was told he failed a polygraph exam.

Before trial, the district court granted Tubbs' motion to suppress the results from the polygraph test and any mention that Tubbs had taken the test. Tubbs then filed a

8

motion to suppress the statements he had made during and after the polygraph test. After a hearing, the district court determined that Tubbs' statements were made voluntarily during a noncustodial interview, so they were admissible. Tubbs now argues that when Wall told him that he failed the test, the interview morphed into a custodial interrogation so his statements were not freely and voluntarily given.

We find that Tubbs failed to preserve this issue for appeal, but even had he properly preserved the issue, his argument would fail.

*Issue not preserved*

Issues not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Tubbs concedes that he did not object to the use of the statements at trial but argues that this court should still consider the issue for a number of reasons relating to the specific facts of his case.

We recognize several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue that was not raised below and should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. Thereafter, our

9

Supreme Court held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Tubbs, however, does not argue or mention any of the *Phillips* exceptions listed above. Instead, he first suggests that we should consider the issue because the issues and facts surrounding the admissibility of the statements had not changed from the time of the motion to suppress hearing to the trial. Second, Tubbs argues that he was represented by different counsel during trial than during the motion to suppress and that the two proceedings were almost four years apart. Finally, Tubbs argues that his attorney was ineffective for failing to object to the use of his statements at trial. Because Tubbs' arguments fail to meet any exception, we apply the general rule that a new legal theory may not be asserted for the first time on appeal.

To this, Tubbs argues that he adequately raised this legal theory below via his suppression motion. But normally, any pretrial objection to the admission or exclusion of evidence must be preserved by a contemporaneous objection at trial. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012). But see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous-objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Tubbs made no contemporaneous objection. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

Kansas appellate courts have refused to strictly apply the contemporaneous-objection rule in some contexts if the underlying purpose for the rule has been satisfied. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013). Tubbs relies on *State v. Spagnola*, 295 Kan. 1098, 289 P.3d 68 (2012), in arguing that his is such a case. In *Spagnola*, our Supreme Court found that the appellant's suppression issue was

10

adequately preserved for appellate review even though no contemporaneous objection was made at trial. 295 Kan. at 1103.

But *Spagnola* is distinguishable for several reasons. There, our Supreme Court specifically noted five important facts before finding the issue was adequately preserved: (1) "the trial court explicitly stated it understood that any future objections would be based on its ruling on the suppression issue and that the issue was clear"; (2) "[a]lthough the court directed Spagnola to make specific contemporaneous objections, it did not repeat that requirement when it denied Spagnola's second suppression motion immediately before trial"; (3) "[t]he same judge twice ruled on the suppression issue and then conducted the trial"; (4) Spagnola did object at trial, albeit in an untimely fashion; and (5) "the purpose of the contemporaneous objection rule was fulfilled without necessitating repeated interruptions of the trial." 295 Kan. at 1103.

The facts here are not similar to those in *Spagnola*. First, the trial court never referenced the possibility of future objections and did not indicate that it would reconsider the suppression issue. Second, Tubbs' suppression hearing was years before trial and there is nothing in the record indicating that Tubbs thought a contemporaneous objection was unnecessary under the circumstances. Third, unlike in *Spagnola*, the judge who presided over Tubbs' motion hearing was different than the judge who presided over his trial. Although the trial court never indicated that "it would alter the rulings previously made during the motion to suppress hearing[,]" a request to alter the ruling was never made. Fourth, unlike Spagnola, Tubbs never objected to the statements at trial.

Finally, the purpose of the contemporaneous-objection rule was not fulfilled by Tubbs' motion to suppress alone. The purpose of the contemporaneous-objection rule is founded on fairness to the district court:

11

> "[T]he objection requirement is a 'salutary procedural tool' that gives the district court 'the opportunity to conduct the trial without using . . . tainted evidence, and thus avoid possible reversal and a new trial.' . . . [T]he contemporaneous-objection requirement is 'practically one of necessity if litigation is ever to be brought to an end.' 204 Kan. at 611." *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009) (quoting *Baker v. State*, 204 Kan. 607, 611, 464 P.2d 212 [1970]).

The record here does not show that the district court was put on notice or given the opportunity to avoid reversal or a new trial in connection with the use of allegedly tainted evidence. An additional objection at trial was necessary. As a result, we find that Tubbs failed to preserve this issue.

*Tubbs was not in custody when he made his incriminating statements.*

Alternatively, we reach Tubbs' argument that his interview with Wall became a custodial interrogation during the conversation after Wall told him that he failed the polygraph test. We find Tubbs' statements were voluntarily made during a noncustodial interrogation.

We first identify the statements at issue. After Wall told Tubbs he was being deceptive in his answers and asked Tubbs to explain why he failed the polygraph examination, Tubbs made several explanations of what may have happened. Tubbs asked the detectives, "'What if I told [you I] thought it was my wife?'" After asking that, Tubbs stated that "he didn't want to make any excuses if he needed help." Wall suggested to Tubbs that he may have assaulted B.G. while he was sleepwalking, assuming he was interacting with his wife, then stopped once he realized B.G. was not his wife. Tubbs agreed with Wall and responded: "[T]hat sounds like it could have happened. . . . [I]n my heart I felt something wrong, like I possibly did something wrong." Tubbs also told the detectives that he "want[ed] to admit to that." Finally, Tubbs became emotional and stated that he needed to "man up" and tell his wife.

12

We use a dual standard when we review a ruling on a motion to suppress a confession. We review the factual underpinnings of the decision under a substantial competent evidence standard, but we review the ultimate legal conclusion drawn from those facts de novo. We do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015). We apply this standard here. See *State v. Lewis*, 299 Kan. 828, 835, 326 P.3d 387 (2014) (applying bifurcated standard when determining whether an interrogation is custodial in nature).

Tubbs' claim that his interview morphed into a custodial interrogation focuses on the time after Wall told Tubbs he failed the polygraph examination. Tubbs claims that "Wall's technique of informing [him] that he had failed the polygraph test coupled with the clear implication that the failure needed to be explained somehow, would have communicated to any reasonable [person] . . . that the interrogation was no longer . . . voluntary . . . and would lead to prosecution if a sufficient explanation was not provided."

Nothing inherent in a polygraph examination setting automatically makes it custodial. Nor does confronting a defendant with his failed polygraph examination render the interview custodial per se. See *People v. Mays*, 174 Cal. App. 4th 156, 166, 95 Cal. Rptr. 3d 219 (2009). And an otherwise noncustodial interview does not necessarily convert to a custodial interview even where police confront a suspect with false incriminating evidence. See, e.g., *United States v. LeBrun*, 363 F.3d 715, 718, 724 (8th Cir. 2004) (deciding interview not custodial though officers falsely told defendant they had significant evidence establishing his guilt); *State v. Wiernasz*, 584 N.W.2d 1, 5 (Minn. 1998) (concluding interview not custodial where police falsely told defendant polygraph results established guilt with total certainty).

We analyze each case on its own facts. *Lewis*, 299 Kan. at 835. An interrogation is custodial if, using an objective standard, a reasonable person, under the totality of the

circumstances, would have felt he or she was not at liberty to terminate the interview. *State v. Swindler*, 296 Kan. 670, 682, 294 P.3d 308 (2013). Factors a court may consider in analyzing the circumstances of whether an interrogation is custodial in nature include: (1) the place and time of the interrogation; (2) the duration of the interrogation; (3) the number of police officers present; (4) the conduct of the officers and the person subject to the interrogation; (5) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person is being questioned as a suspect or a witness; (7) whether the person being questioned was escorted by the police to the interrogation location or arrived under his or her own power; and (8) the result of the interrogation, for instance, whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No one factor outweighs another, nor do the factors bear equal weight. *Lewis*, 299 Kan. at 835.

Most of the relevant factors here weigh in favor of finding Tubbs' interactions with Wall to be voluntary. Tubbs voluntarily drove himself to the police 15 minutes before he and Wall agreed to meet. Wall was the only person in the room with Tubbs when he was questioned. Walls spoke in a calm, communicative manner and never threatened or intimidated Tubbs. Tubbs described the interview as cordial and explained that Wall was fairly friendly. Wall testified that "Tubbs was very cooperative, engaging. He tracked the entire conversation." Wall was not armed with a weapon and Tubbs was not handcuffed or restrained in any way. See *State v. Warrior*, 294 Kan. 484, 497, 277 P.3d 1111 (2012). Tubbs was not deprived of food or water or denied access to the outside world. Tubbs was never physically abused or put under hot lights. He was never told he could not leave—instead, he was free to leave at any time. Tubbs never asked to end the interview and was permitted to leave when the interview was over.

Tubbs agreed to take the polygraph examination. He signed a consent form before taking the exam. And contrary to Tubbs' argument at the suppression hearing, neither the consent form nor Wall indicated to Tubbs that the information he relayed either through

14

the test or other communication could not be used against him later. To the contrary, the consent form stated that Wall could share the information obtained by the polygraph examination as he saw fit, and Wall told Tubbs that he would share that information.

The interview with Tubbs lasted between two and one-half to three hours. The portion of the interview after the polygraph examination lasted for around one hour before Tubbs was allowed to leave to go home. Our Supreme Court has found interviews of similar duration to be noncustodial. For example, in *State v. Deal*, 271 Kan. 483, 498-99, 23 P.3d 840 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006), our Supreme Court affirmed a district court's holding that a three-hour interview was noncustodial even though Deal was escorted to the police station by police officers, was not told he could leave, and was interviewed in a locked room. Similarly, in *State v. Jacques*, 270 Kan. 173, 186-87, 14 P.3d 409 (2000), our Supreme Court found a two-hour interview to be noncustodial.

Only two factors point toward a conclusion that the interrogation was custodial in nature: (1) When Tubbs first agreed to the interview, he was aware that he was being interviewed as a suspect of a crime; and (2) Tubbs was interviewed in a police station in an 8-foot by 8-foot room whose door was closed but unlocked. See *Warrior*, 294 Kan. at 497 (finding questioning in a police station weighs in favor of an interview being custodial).

Under the totality of the circumstances, a reasonable person would have felt free to leave and terminate the interrogation. Tubbs' subjective belief, if any, that he was not free to go is irrelevant because an objective test governs the custodial interrogation issue. We find no error in the district court's finding that Tubbs was not in custody at the time he made his incriminating statements.

15

*Tubbs' statements were made voluntarily.*

Tubbs argues that his statements were involuntarily made because they were coerced. Tubbs maintains that because he was accused of sexually assaulting children and was then told he failed a polygraph examination, he had no choice but to explain the sexual assaults by confessing to them. Tubbs further argues that his statements were involuntary because Wall impermissibly suggested that Tubbs was sleep walking when he mistakenly assaulted B.G., thinking she was his wife. Tubbs also suggests that he was taking medications for mood disorders and was under emotional stress when he involuntarily implicated himself in the crimes. Tubbs thus argues a kind of psychological or mental coercion rather than physical coercion.

The State has the burden to prove the voluntariness of a confession by a preponderance of the evidence—that the statement was the product of the defendant's free and independent will. *Dern*, 303 Kan. at 392. The court looks at the totality of the circumstances surrounding the confession and determines its voluntariness by considering the following nonexclusive factors:  (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015); see *Dern*, 303 Kan. at 392.

> "'These factors are not to be weighed against one another with those favorable to a free and voluntary confession offsetting those tending to the contrary. Instead, the situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect. Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and

16

the confession was not therefore a free and voluntary act.' [Citation omitted.]" *State v. Mattox*, 305 Kan. 1015, 1043, 390 P.3d 514 (2017).

Tubbs voluntarily submitted to the interview and to the polygraph examination. Nothing in the record suggests that he was mentally impaired at the time. Wall knew that Tubbs was taking an antidepressant medication. Still, Wall felt that Tubbs was able to understand what he was saying, and Tubbs made appropriate responses to the questions Wall asked. Nothing in the record suggests that Tubbs did not speak or understand English. And Wall felt that Tubbs was "cooperative, engaging. He tracked the entire conversation."

Wall spoke calmly and was polite throughout the interview. He never threatened or intimidated Tubbs. Tubbs was never placed in a harsh environment or subjected to physical harm. He was not deprived of food, water, or contact with the outside world. And at trial, Tubbs testified that no one forced the words out of his mouth.

Tubbs was questioned in a police station for up to three hours. The door to the room Tubbs was interviewed in was shut but unlocked. Still, according to Wall, Tubbs was free to leave the interview at any time and he was freely released when the interview was over. We find no error in the district court's conclusion that Tubbs' statements were made voluntarily.

Because Tubbs' statements were voluntarily made during a noncustodial interrogation, the district court did not err in allowing the jury to hear those statements at trial.

*Was counsel ineffective for failing to object to the use of Tubbs' inculpatory statements at trial?*

Tubbs briefly argues that his trial counsel was ineffective for not objecting to Wall's testimony about Tubb's incriminating statements.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Tubbs establishes neither deficient performance nor prejudice here.

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *Kelly*, 298 Kan. at 970. To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability, meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91).

18

We do not assume that the failure to object established deficient performance. See *State v. Orr*, 262 Kan. 312, 333, 940 P.2d 42 (1997). We have found that Tubbs' encounter with Wall after his polygraph exam was not custodial and that Tubbs' statements were made voluntarily. "Because the encounter was not custodial under the totality of the circumstances, a *Miranda* waiver was not necessary and the evidence was admissible. The performance of [defendant's] trial counsel, therefore, was not deficient for deciding not to object to evidence that was admissible at trial. See *Moody*, 35 Kan. App. 2d at 561." *Sanders v. State*, No. 109,677, 2014 WL 4080076, at *4 (Kan. App. 2014) (unpublished opinion). Here, as in *Sanders*, the incriminating statements were admissible and, thus, counsel's performance was not deficient for failing to object to their introduction at trial.

Counsel's decision not to object may well have been strategic. Because Tubbs chose to testify at trial, his counsel knew the State could use Tubbs' incriminating statements against him during cross-examination. Tubbs' counsel may have chosen not to object to Wall's testimony about Tubbs' incriminating statements to lessen the blow of the State's impeachment of Tubbs with those same statements. It is Tubbs' burden to show that trial counsel's decision not to challenge the evidence was not sound trial strategy. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *Kelly*, 298 Kan. at 970. Tubbs fails to rebut this presumption; therefore, he failed to meet his burden.

Nor does Tubbs show how he was prejudiced by his counsel's performance. Thus, Tubbs' conclusory claim regarding ineffectiveness of counsel fails.

*Was Tubbs denied an impartial trial judge?*

At the end of his supplemental brief, Tubbs makes a single sentence allegation that he was not "provided an impartial judge pursuant to the Due Process Clause of the United

19

States Constitution." He then cities several United States Supreme Court opinions, some of which state that criminal and civil defendants must be granted impartial and disinterested tribunals.

Although we liberally construe pro se pleadings, Tubbs is still required to follow procedural rules. *Sperry v. McKune*, 305 Kan. 469, 490, 384 P.3d 1003 (2016). Tubbs raises this argument only incidentally. Tubbs neither shows that his trial judge had a conflict of interest or a pecuniary interest in having him convicted, nor alleges any other factual basis by which we could review the merits of this claim. We deem this claim to be abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017); *Sprague*, 303 Kan. at 425.

*Conclusion*

Tubbs failed to preserve or adequately argue most of the issues presented on appeal. Nonetheless, ample evidence supports the trial court's finding that Tubbs' inculpatory statements were made voluntarily during a noncustodial interview. The record establishes that the trial court had subject matter jurisdiction, the State's complaint was sufficient, and Tubbs' due process and constitutional rights were not violated.

Affirmed.